**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ALLEGRO CONSULTANTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WELLINGTON TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No. 13-cv-02204-BLF <br><br> **ORDER (1) GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS TO AUDAX, KIMMES, AND BIZJAK AND DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS TO JASKO; (2) GRANTING MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY AS TO CLAIMS 9-11 WITH LEAVE TO AMEND; (3) DENYING MOTION TO DISMISS FOR IMPROPER VENUE; AND (4) DENYING ALTERNATIVE MOTION TO TRANSFER** <br><br> [Re: ECF 39] |

Plaintiff Allegro Consultants, Inc. ("Allegro") brings this action to recover monies for software support services rendered to Defendant Wellington Technologies, Inc. ("Wellington"). Allegro sues Wellington and several other defendants that are alleged to be alter egos of Wellington and of each other: Audax Solutions LLC ("Audax"), Todd Kimmes ("Kimmes"), Ed Griglak ("Griglak"), Joseph Jasko ("Jasko"), and James Bizjak ("Bizjak"). Audax, Kimmes, Jasko, and Bizjak move to dismiss the action for lack of personal jurisdiction, failure to join an indispensable party, and improper venue. Alternatively, they request that the Court transfer the action to the Northern District of Ohio.

The Court has considered the briefing and the oral argument presented at the hearing on August 21, 2014. For the reasons discussed below, the motion to dismiss for lack of personal jurisdiction is GRANTED as to Audax, Kimmes, and Bizjak without leave to amend and DENIED as to Jasko; the motion to dismiss for failure to join an indispensable party is GRANTED as to Claims 9-11 with leave to amend; the motion to dismiss for improper venue is DENIED; and the alternative motion to transfer is DENIED.

## I. BACKGROUND[1]

Allegro is a California corporation that provides software support services. (First Am'd Compl. ("FAC") ¶ 1, ECF 15; Cooper Decl. ¶¶ 4-5) Wellington is an Ohio corporation that buys, sells, repairs, re-manufactures, services, distributes, and generally deals in computer hardware and software. (Jasko Decl. ¶ 2, ECF 40) Effective August 1, 2007, Wellington retained Allegro under a Software Support Services Agreement to provide software support services as ordered by Wellington "from time to time." (Cooper Decl. Ex. B, ECF 51-5) Bizjak, one of Wellington's co-founders, traveled to California to negotiate the agreement. (Cooper Decl. ¶ 4; Bizjak Decl. ¶ 2, ECF 41) Wellington did not order software support services from Allegro for approximately fifteen months after the agreement was finalized. (Cooper Decl. ¶ 5)

In 2008, Wellington was awarded a large contract to maintain servers at AT&T data centers throughout the country. (Cooper Decl. ¶ 5; Jasko Decl. ¶ 4) Wellington requested that Allegro provide software services to support Wellington in fulfilling the AT&T contract, and Allegro did provide such services. (*Id.*) Most of Allegro's work on the contract was done in California. (Cooper Decl. ¶ 5) Jasko, Wellington's President, spent about one week a month in California during the next two years as the AT&T business grew. (*Id.*; Jasko Decl. ¶ 4) Wellington also hired a local California employee and leased office space and a corporate apartment in California. (Cooper Decl. ¶¶ 7-8)

In 2009 and 2010, Wellington lost ten significant contracts, including the AT&T contract. (Jasko Decl. ¶ 6) Wellington was unable to make payments on a $3.5 million line of credit that it

---

[1] The background facts are drawn from the operative first amended complaint as well as declarations submitted by the parties in connection with the motions.

2

had obtained from non-party Liberty Bank. (Jasko Decl. ¶¶ 5-7) Wellington also failed to pay Allegro more than $700,000 in invoices. (FAC ¶ 27) On December 8, 2010, Wellington and Allegro entered into a Vendor Customer Terms Modification Agreement under which Wellington was to pay Allegro the past-due invoices over a five-year period at 5% interest. (FAC ¶ 31; Cooper Decl. Ex. C, ECF 51-6) Wellington was to make monthly payments of approximately $12,000 beginning in February 2011. (FAC ¶ 31) Jasko specifically represented to Allegro that Wellington intended to make the required payments. (FAC ¶ 42) Wellington failed to make the payments. (FAC ¶ 31)

In March 2011, Allegro filed suit against Wellington in the Northern District of California, alleging claims for breach of contract and fraud. (Pl.'s Corrected RJN Ex. H, ECF 52-2)[2] Allegro alleges that it dismissed that action without prejudice after reaching an oral agreement with Wellington under which Wellington committed to pay the past-due invoices on an agreed-upon schedule. (FAC ¶ 36) Wellington made payments under the new schedule through June 2012 but then it made only partial payments for some months and no payments at all for other months. (*Id.*)

In late 2012, Liberty Bank informed Wellington that it was electing to foreclose on Wellington's assets, which were collateral for the line of credit that Liberty Bank had extended to Wellington. (Bizjak Decl. ¶ 7) Flagship Technologies, Inc. ("Flagship"), a Minnesota corporation in the business of reselling computer hardware and peripheral equipment, expressed interest in buying the collateral. (Kimmes Decl. ¶¶ 2-5, ECF 42). Flagship had been one of Wellington's suppliers of computer parts and, like Allegro, was one of Wellington's unsecured creditors. (Kimmes Decl. ¶ 3, ECF 42; Kimmes Suppl. Decl. ¶ 3, ECF 54) Flagship's owner, Kimmes, hoped to recoup some of the losses that Flagship sustained as a result of Wellington's delinquent account. (*Id.*) Flagship's wholly owned subsidiary, Westlake Investments, LLC ("Westlake"), formed Audax on April 24, 2013. (Kimmes Decl. ¶ 7, ECF 42; Pl.'s Corrected RJN Ex. G, ECF 52-1).[3] A deal was worked out under which Wellington agreed to voluntarily turn over certain of

---

[2] The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[3] The Court may take judicial notice of records showing the date of Audax's formation. *See id.*

3

its assets to Liberty Bank for immediate sale to Audax. (*Id.* ¶ 6) On April 12, 2013, Wellington and Liberty Bank entered into an Agreement for Turnover of Collateral and Private Sale. (Jasko Decl. Ex. 4) On April 30, 2013, Liberty Bank and Audax signed a Secured Creditor Asset Purchase Agreement, which provided that it was "effective as of 12:00 midnight (EDT) April 12, 2013." (Kimmes Decl. ¶ 6 and Ex. 2, ECF 42) Under the Secured Creditor Asset Purchase Agreement, Audax paid Liberty Bank $250,000 cash for certain of Wellington's assets. (*Id.*)

On May 14, 2013, Allegro filed the present lawsuit against Wellington, asserting claims for breach of contract and fraud. On February 21, 2014, Allegro filed the operative FAC, adding a number of defendants: Audax; Kimmes, the founder and owner of Flagship; Griglak, a co-founder of Wellington; Bizjak, a co-founder of Wellington; and Jasko, President of Wellington. (FAC, ECF 15) Allegro claims that Audax is merely an alter ego of Wellington; that all of the individual defendants likewise are alter egos of Wellington and of each other; and that the Secured Creditor Asset Purchase Agreement under which Audax purchased certain of Wellington's assets from Liberty Bank is void as a fraudulent transfer of assets for the purpose of avoiding paying Allegro for its services. (FAC ¶ 9) Alternatively, Allegro claims that Audax is a successor or "mere continuation" of Wellington. (FAC ¶ 12)

The FAC asserts claims for: (1) breach of contract against Wellington; (2) fraud against Jasko and Wellington; (3) common counts for money had and received against all defendants; (4) fraud and intentional misrepresentation against all defendants; (5) fraud and negligent misrepresentation against all defendants; (6) fraudulent concealment against all defendants; (7) false promise against all defendants; (8) declaratory relief against all defendants; (9) fraudulent transfer with actual intent to defraud pursuant to California Civil Code § 3439.04(A)(1) against all defendants; (10) constructive fraudulent transfer pursuant to California Civil Code § 3439.04(A)(2) against all defendants; and (11) constructive fraudulent transfer pursuant to California Civil Code § 3439.05 against all defendants.

## II. DISCUSSION

Defendants Audax, Kimmes, Jasko, and Bizjak move to dismiss the FAC for lack of personal jurisdiction over them, for failure to join Liberty Bank as an indispensable party, and for

4

1  improper venue.  Alternatively, Defendants request that the Court transfer the action to the
2  Northern District of Ohio.

### A. Personal Jurisdiction

#### 1. Legal Standard

When a defendant challenges a court's personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  If the motion is evaluated based upon written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (internal quotation marks and citation omitted).  Uncontroverted allegations in the complaint are accepted as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Id.*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, --- U.S. ----, ----, 134 S. Ct. 1115, 1121 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. ----, ----, 134 S. Ct. 746, 753 (2014)); *see also Schwarzenegger*, 374 F.3d at 800 ("[T]he district court applies the law of the state in which the district court sits."). California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-01.  "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 134 S. Ct. at 1121.  "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler*, 134 S. Ct. at 754.  General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation marks and citation omitted).  A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation omitted).  In contrast,

specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* A defendant's contacts with a *resident* of the forum state alone are insufficient to establish personal jurisdiction – to satisfy due process, "the defendant's suit-related conduct must create a substantial connection *with the forum State.*" *Walden*, 134 S. Ct. at 1121 (emphasis added).

### 2. Defendants' Contacts with California

With respect to each of the moving parties, the Court must determine whether Allegro has made out a prima facie case of personal jurisdiction based upon the party's own contacts with California or based upon Allegro's alter ego and successor theories. (*See* FAC ¶¶ 9, 12) It is undisputed for purposes of this motion that Wellington has sufficient contacts with California to give rise to personal jurisdiction. (*See, e.g.* Cooper Decl. ¶¶ 4-10, ECF 51-4; Griglak Decl. ¶¶ 2-3) Thus if Wellington's contacts may be imputed to any of the moving parties, the Court would have personal jurisdiction over those parties as well.

California law applies to Allegro's alter ego and successor claims. *See In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010) ("In determining whether alter ego liability applies, we apply the law of the forum state"); *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) ("We apply the law of the forum state in determining whether a corporation is an alter ego of an individual.") (internal quotation marks and citation omitted); *Wilson v. Metals USA, Inc.*, No. CIV. S-12-0568 LKK/GGH, 2013 WL 4586919, at *7 (E.D. Cal. Aug. 28, 2013) (district court sitting in diversity applies law of the forum state to questions of successor liability).

"California recognizes alter ego liability where two conditions are met: First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *Schwarzkopf*, 626 F.3d at 1038 (internal quotation marks and citation omitted). "Under California law, and under traditional rules of successor liability, asset purchasers are not liable as successors unless one of the following four exceptions applies: (1) The purchasing corporation expressly or impliedly agrees to assume the liability; (2) The transaction amounts to a 'de-facto' consolidation or merger; (3)

1   The purchasing corporation is merely a continuation of the selling corporation; or (4) The
2   transaction was fraudulently entered into in order to escape liability." *Cygnus Telecommc'ns*
3   *Tech., LLC v Worldport Commc'ns, Inc.*, 543 F. Supp. 2d 1113, 1121 n.5 (N.D. Cal. 2008).

### a.   **Audax and Kimmes**

Audax's and Kimmes' own contacts with California are insufficient to give rise to personal jurisdiction. Kimmes is a Minnesota resident. (Kimmes Decl. ¶ 9, ECF 42) He has never lived in California or maintained an office or bank account there. (*Id.*) It appears that his sole contact with California was a trip for pleasure in 2013. (*Id.*) Kimmes owns 90% of the outstanding shares of Flagship, a Minnesota corporation; Flagship wholly owns Westlake, a Minnesota limited liability company; and Westlake owns 90% of Audax, a Minnesota limited liability company. (*Id.* ¶¶ 2, 6-7) Audax is not registered, licensed, or qualified to do business in California. (*Id.* ¶8) It does not have offices, employees, bank accounts, or property in California and it does not pay taxes there. (*Id.*) Audax remotely services the equipment of its single California customer.

With respect to Allegro's alter ego and successor theories, Kimmes never held an ownership interest in Wellington. (Kimmes Suppl. Decl. ¶ 3, ECF 54) None of the other individual defendants ever held an ownership interest in Audax. (*Id.* ¶ 2). Allegro argues that alter ego is shown by the fact that the Secured Creditor Asset Purchase Agreement (under which Audax bought certain of Wellington's assets from Liberty Bank) bears the date April *12*, 2013 (*see* Kimmes Decl. Ex. 2, ECF 42), but Audax did not come into existence until April *24*, 2013 (*see* Pl.'s Corrected RJN Ex. G, ECF 52-1). Allegro asserts that this evidence suggests that Kimmes, rather than Audax, was the true purchaser. Even if this inference could be drawn, at most the inference would suggest that Kimmes is the alter ego of *Audax*; it does not suggest that either Kimmes or Audax is the alter ego of *Wellington*. Moreover, the Secured Creditor Asset Purchase Agreement does not indicate that it was *signed* on April 12, 2013, but rather that the parties to the agreement had elected to make it "*effective* as of 12:00 midnight (EDT) April 12, 2013." (Kimmes Decl. Exh. B, ECF 42 (emphasis added)) Kimmes explains in his declaration that the Secured Creditor Asset Purchase Agreement actually was signed on April 30, 2013. (Kimmes Decl. ¶ 6)

7

Allegro also points to evidence that a number of key Wellington officers and employees now work for Audax and that Wellington's Linked In page directs viewers to "Explore the services of Audax Solutions." (Cooper Decl. ¶ 10 and Ex. F, ECF 51-5, 51-9; Griglak Decl. ¶ 3, ECF 51-10) While this evidence shows some relationship between Audax and Wellington, the Court concludes that it is insufficient to make out a prima facie case that there is unity of interest and ownership between the two companies, or that Audax is a successor of Wellington.[4] Indeed, the Court does not find it particularly surprising that Audax sought out Wellington's employees given that Audax had purchased certain of Wellington's assets, including existing contracts. Nor is it surprising that Wellington's employees were looking for new jobs given Wellington's financial picture.

Accordingly, the motion to dismiss for lack of personal jurisdiction is GRANTED as to Audax and Kimmes. Allegro's counsel indicated at the hearing that all known facts regarding personal jurisdiction are in the record. Leave to amend therefore is denied.

### b. Jasko

However, Allegro has made out a prima facie case of specific personal jurisdiction based upon Jasko's contacts with California. The Ninth Circuit has articulated a three-prong test for determining whether a nonresident defendant is subject to specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. That test must be applied in light of and as informed by the Supreme Court's recent decision in *Walden*, which is discussed in detail below. In order for a Court to exercise specific personal jurisdiction over a non-resident defendant,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

---

[4] Defendants contend that Ohio law governs the alter ego and successor issues. The Court would reach the same conclusion even if it were to apply Ohio law. *See, e.g., Rondy & Co. v. Plastic Lumber Co.*, C.A. No. 25548, 2011 WL 5377741, at *6 (Ohio Ct. App. Nov. 9, 2011).

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). The plaintiff bears the burden of proof with regard to the first two elements. *Sher v. Johnson*, 911 F.2d 1357, 1361 (1990). If the plaintiff satisfies that burden, the burden shifts to the defendants to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.* at 1364 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Jasko (Wellington's President) called Cooper (Allegro's President) in 2008 to request Allegro's support on Wellington's AT&T contract. (Cooper Decl. ¶ 5) Jasko spent approximately one week a month in California in 2008 and 2009, working with Allegro on the AT&T contract. (Cooper Decl. ¶¶ 4-5) Jasko also allegedly represented that Wellington would make the payments required under the Vendor Customer Terms Modification Agreement. (FAC ¶ 42) Allegro's claims against Jasko – almost all of which are grounded in fraud – arise from those contacts. The Court concludes that Allegro has met its burden of demonstrating that Jasko directed his activities toward California (and in fact performed many of those activities *in* California), and that Allegro's claims arise out of the forum-related activities.

Jasko has not presented a compelling reason why exercise of jurisdiction would be unreasonable. He argues without citation to authority that his actions on behalf of Wellington cannot give rise to jurisdiction over him personally. (*See* Opp. at 4-5, ECF 53) That argument is unavailing in light of *Calder v. Jones*, 465 U.S. 783, 790 (1984). In *Calder*, the Supreme Court affirmed the California state courts' exercise of jurisdiction over two nonresident defendants who had allegedly libeled the plaintiff in an article they wrote and edited in Florida for publication in the *National Enquirer*. Rejecting the defendants' argument that their contacts with the forum state – writing and editing the article – occurred only in their capacities as employees of the National Enquirer, the Supreme Court held that the defendants' "status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790.

The Supreme Court recently revisited *Calder* in *Walden*, in which the plaintiffs brought a *Bivens*[5] action against Walden, a Georgia police officer working as a deputized Drug Enforcement

---

[5] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

9

Administration agent at Atlanta's Hartsfield-Jackson International Airport. *Walden*, 134 S. Ct. at 1119. Walden seized almost $97,000 in cash from the plaintiffs, professional gamblers en route from Puerto Rico to Las Vegas, Nevada, despite their claims that the cash consisted of their gambling bank and winnings. *Id.* Walden seized the cash after using a drug-sniffing dog to perform a sniff test that the plaintiffs characterized as "at best, inconclusive," and later he helped draft an allegedly false affidavit to show probable cause for forfeiture of the money. *Id.* at 1119 & n.1. The plaintiffs sued Walden in the District of Nevada, which dismissed the suit for lack of personal jurisdiction. *Id.* at 1120. The Ninth Circuit reversed, holding that Walden had "expressly aimed" his submission of the allegedly false affidavit at Nevada by submitting the affidavit to the United States Attorney's Office in Georgia with knowledge that it would affect persons with a "significant connection" to Nevada. *Id.* The Supreme Court held that the Ninth Circuit had erred in focusing on Walden's contacts with the *plaintiffs* rather than his contacts with the *forum*. *Id.* at 1124. It concluded that: "[Walden's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id.* at 1125. Characterizing *Walden* as entirely consistent with *Calder*, the Supreme Court noted that in *Calder* the alleged tort of libel actually occurred *in* California as a result of the widespread circulation of the offending article there, and that as a result the defendants had significant contacts with California. *Id.* at 1124.

In the present case jurisdiction is not based upon conduct occurring outside of California but "aimed" at a California resident. Instead, jurisdiction is based upon misrepresentations that Jasko allegedly made directly to Allegro in connection with services performed by Allegro in California and supervised by Jasko on-site in California. Under both *Calder* and *Walden*, those contacts are sufficient to give rise to specific personal jurisdiction. Accordingly, the motion to dismiss for lack of personal jurisdiction is DENIED as to Jasko.

### c. Bizjak

The record discloses far more limited California contacts on the part of Bizjak. While

Bizjak negotiated the Software Support Services Agreement in California in 2007 (Cooper Decl. ¶¶ 4, ECF 51-4), no allegation or evidence establishes that he had contacts with California after that initial negotiation. Allegro does not assert any claims arising out of the 2007 negotiations. Thus Allegro has failed to establish a prima facie case of personal jurisdiction based upon Bizjak's own contacts with California.

With respect to Allegro's theory that Bizjak is an alter ego of Wellington, there is no evidence of the factors that typically suggest an alter ego relationship in California: commingling of funds, the individual's treatment of corporate assets as his own, disregard of legal formalities and the failure to maintain arm's length relationships among related entities, or diversion or manipulation of assets. *See Schwarzkopf*, 626 F.3d at 1038. Absent such evidence, the Court concludes that Allegro has failed to make out a prima facie case of personal jurisdiction based upon alter ego.

Accordingly, the motion to dismiss for lack of personal jurisdiction is GRANTED as to Bizjak. Allegro's counsel indicated at the hearing that all known facts regarding personal jurisdiction are in the record. Leave to amend therefore is denied.

**B.      Indispensable Party**

### 1.      Legal Standard

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party required under Federal Rule of Civil Procedure 19, the court engages in a three-step inquiry. *Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1178-79 (9th Cir. 2012). First, the court must determine whether the absent party is necessary – that is, required to be joined if feasible – under Rule 19(a). *Id.* at 1179. A party may be necessary under Rule 19(a) under three circumstances: (1) if the court cannot accord complete relief among existing parties; (2) if the absent party has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest; or (3) if the absent party has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. *Id.*

Second, if an absent party is necessary, the court must determine whether it is feasible to

order joinder of the absent party. *Id.* Third, if joinder is not feasible, the court must determine whether the case can proceed without the absent party or whether the absent party is indispensable such that dismissal is required. *Id.*

A party may be necessary to some claims and not others, *see Lyon v. Gila River Indian Comty.*, 626 F.3d 1059, 1068 (9th Cir. 2010), and the court may dismiss some claims under Rule 19 while allowing others to proceed, *see EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1083 (9th Cir. 2010).

### 2. Liberty Mutual

Claims 9, 10, and 11 seek to void the Secured Creditor Asset Purchase Agreement under which Audax purchased certain of Wellington's assets from Liberty Bank. As a party to the contract that Allegro seeks to void, Liberty Bank clearly has an interest that could be impaired if those claims are resolved in its absence. Based upon the current record, it does not appear feasible to join Liberty Bank because it does not appear that Liberty Bank is subject to this Court's personal jurisdiction. The Ninth Circuit has "repeatedly held that '[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.'" *EEOC v. Peobody Western Coal*, 610 F.3d at 1082 (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)). Thus Liberty Bank is an indispensable party to claims seeking to void the Secured Creditor Asset Purchase Agreement.

At the hearing, the Court noted that the scope of Defendants' motion was unclear. Defendants' counsel clarified that Defendants do not seek dismissal of the entire action for failure to join an indispensable party and he agreed that dismissal is appropriate only with respect to those claims seeking to void the Secured Creditor Asset Purchase Agreement. Accordingly, the motion to dismiss is GRANTED as to Claims 9-11 for failure to join an indispensable party. The Court will grant leave to amend so that Allegro may join Liberty Bank as a defendant if in fact Liberty Bank is subject to personal jurisdiction and such joinder is feasible.

### C. Venue

Defendants seek dismissal of the action under Federal Rule of Civil Procedure 12(b)(3) for

12

improper venue or, alternatively, transfer of the action to the Northern District of Ohio.

### 1. Dismissal

"A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Defendants argue that the action should be dismissed because venue is proper only in the Northern District of Ohio. Because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of California – e.g., the negotiation and execution of the Software Support Services Agreement – venue is proper here.

Defendants rely on a forum selection clause contained in the Secured Creditor Asset Purchase Agreement, which provides that any "action under or to enforce" the agreement must be brought in a state or federal court within the Northern District of Ohio, Eastern Division at Cleveland.[6] (Kimmes Decl. Exh. 2 ¶ 17g) The forum selection clause is not applicable here, as none of Allegro's claims are brought "under or to enforce" the Secured Creditor Asset Purchase Agreement; to the contrary, Allegro seeks to void that agreement.

Accordingly, the motion to dismiss for improper venue is DENIED.

### 2. Transfer

Defendants alternatively seek to transfer the action to the Northern District of Ohio. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Defendants assert that the action could have been brought in the Northern District of Ohio because the Secured Creditor

---

[6] The Agreement for Turnover of Collateral and Private Sale contains a nearly identical forum selection clause. (Jasko Decl. Exh. 4 ¶ 10) However, none of Allegro's claims are brought "under or to enforce" the turnover agreement.

Asset Purchase Agreement was made and performed there. (*See* Mot. at 19) Defendants do not point to record evidence showing that the Secured Creditor Asset Purchase Agreement was made and performed in Ohio. However, even assuming that the action might have been brought in the Northern District of Ohio, Defendants have not demonstrated that transfer to that district is warranted.

In a case not involving a forum-selection clause,[7] a district court considering a § 1404(a) motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. United States Dist. Court for the Western Dist. of Texas*, --- U.S. ----, ----, 134 S. Ct. 568, 581 (2013). "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (alteration in original). The Supreme Court has indicated that "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Id.* The Ninth Circuit has gone further, holding that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Defendants' motion addresses these factors only generally and in conclusory fashion without citation to record evidence. (*See* Mot. at 19) Consequently, Defendants have not made the requisite "strong showing" to warrant disregard of Allegro's choice of forum. The motion for

---

[7] As noted, both the Secured Creditor Asset Purchase Agreement and the Agreement for Turnover of Collateral and Private Sale contain forum selection clauses applying to "actions under or to enforce" those agreements. The forum selection clauses are not relevant to the § 1404(a) analysis, as none of Allegro's claims are brought "under or to enforce" the Secured Creditor Asset Purchase Agreement or the Agreement for Turnover of Collateral and Private Sale.

transfer is DENIED.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion to dismiss for lack of personal jurisdiction is GRANTED without leave to amend as to Audax, Kimmes, and Bizjak and DENIED as to Jasko;

(2) The motion to dismiss for failure to join an indispensable party is GRANTED only as to Claims 9-11 with leave to amend;

(3) The motion to dismiss for improper venue is DENIED;

(4) The motion to transfer is DENIED;

(5) Leave to amend is limited to curing the defects noted herein with respect to the failure to join Liberty Bank as a party – Plaintiff may not add additional claims or parties without leave of the Court; and

(6) Any amended complaint shall be filed on or before September 23, 2014.

Dated: September 2, 2014

BETH LABSON FREEMAN
United States District Judge